Case No. 24-6207

# In the United States Court of Appeals for the Tenth Circuit

––––––––––––––––

Dr. Rachel Tudor,

*Plaintiff/Appellee,*

Ezra Young and Brittany Stewart,

*Defendants/Appellants.*

––––––––––––––––

On Appeal from the United States District Court for the Western District of Oklahoma, Case No. 5:22-cv-00480-D, Hon. Jodi Dishman

––––––––––––––––

## JOINT MEMORANDUM BRIEF OF

## MR. EZRA YOUNG AND MS. BRITTANY STEWART

––––––––––––––––

Ezra Ishmael Young
Law Office of Ezra Young
210 North Sunset Drive
Ithaca, New York 14850
(949) 291-3185
ezra@ezrayoung.com

Brittany M. Stewart
Attorney at Law
PO Box 295
Aurora, MN 55705
(405) 896-7805
brittany.novotny@gmail.com

*Attorneys Pro Se*

ORAL ARGUMENT REQUESTED

## REQUEST FOR ORAL ARGUMENT

Oral argument will help elucidate the complicated procedural history of this matter. It will also facilitate consideration of appropriate remedial measures.

This interlocutory appeal seeks to vindicate Appellants' entitlement to attorneys' fees and costs due them in a civil rights case this Circuit declared their former client to have prevailed at all levels and in which it mandated the district court to award fees and costs.

Appellants seek payment for thousands of hours worked in their former client's merits case. Between the merits case and its ancillaries, Appellants have expended more than ten years of work in proceedings before two federal courts of appeals, three federal district courts, and one state trial court. Appellants both turned down other cases, jobs, and made personal financial sacrifices which their spouses suffered the consequences of to vindicate their former clients' rights and demand full payment of their bills. To date, Appellants' bills have not yet been paid let alone considered on the merits by the Western District.

## RELATED APPEALS

This case concerns unpaid attorneys' bills accrued by Dr. Rachel Tudor in her successful prosecution of her Title VII workplace bias case, the latest appeal of which was decided by this Circuit in September 2021. *Tudor v. Southeastern Oklahoma State University et al.,* 13 F.4th 1019 (10th Cir. 2021) [*Tudor I*] and *Tudor v. Southeastern Oklahoma State University et al.,* 5:15-cv-324-C (W.D. Okla. filed Mar. 30, 2015) [*Tudor Merits*].

In *Tudor I*, this Circuit declared Tudor the prevailing party on appeal and at the trial level and remanded back to the Western District of Oklahoma with instruction to award attorneys' fees and costs. *Tudor I,* 13 F.4th at 1049. On remand, the Western District refused to hear Appellants' petitions for fees and costs. In September 2022, a full year after remand, the Western District dismissed Tudor's merits case and directed Appellants to litigate their right to compensation in an interpleader suit Tudor filed against them. *Tudor Merits*, 2022 WL 4084436, at *2 (W.D. Okla. Sept. 6, 2022). The interlocutory order challenged here was issued in the interpleader suit.

This case is also related to *State of Texas et al. v. United States et al. and Dr. Rachel Jona Tudor*, 16-1534 (5th Cir.), an appeal of *State of Texas et al. v. United States et al.*, 7:16-cv-54-O (N.D. Tex.). *Texas v. US* was a collateral attack on the *Tudor Merits* suit then pending before the Western District.

*Texas v. US* was filed a year after the Western District held that Tudor could bring sex discrimination claims under Title VII despite being transgender. *Tudor Merits*, 2015 WL 4606079 (W.D. Okla. June 10, 2015) (Cauthron, J.). Tudor attempted intervention in *Texas v. US* after Oklahoma won a nationwide injunction in that suit enjoining her merits case in the Western District. After that was denied, Tudor appealed to the Fifth Circuit. After extensive merits briefing, Tudor brokered peace with Oklahoma and others which dissolved the injunction allowing her to proceed in the Western District unencumbered.

# INTRODUCTION

Appellants Mr. Young and Ms. Stewart jointly contend that this Circuit may exercise appellate jurisdiction over their appeal of the Western District's interlocutory order pursuant to the collateral order doctrine.

# PROCEDURAL HISTORY

Appellants represented Dr. Tudor from late 2014 through early 2020. After prevailing at trial, they timely filed petitions for fees and costs in the Western District in June 2018. Thereafter they prosecuted Tudor's merits appeal and defended against cross-appeals before this Circuit, with all merits briefing completed by Appellants as of mid 2019. Appellants withdrew representation in early 2020, passing the near completed appeal off to Tudor's new chosen counsel Jillian Weiss and Jerry Colclazier.

In September 2021, this Circuit issued *Tudor I,* 13 F.4th 1019 (10th Cir. 2021). In sum, *Tudor I* upheld Tudor's victories in the Western District, ordered Tudor immediately reinstated as a professor with tenure, increased her front pay to some $74,000 per annum, and approved of backpay and damages of approximately $360,000. *Tudor I*'s

mandate also directed the Western District to award fees and costs. *Tudor I*, 13 F.4th at 1049. Within 14 days of the mandate issuing, Appellants timely filed supplemental petitions for fees and costs in the Western District.

Appellants are owed significant fees and costs backed up by itemized bills filed in *Tudor Merits* accounting for some $1,644,532.93. *Tudor Merits*, ECF Nos. 339 (order taxing costs to compensate Young in the amount of $11,117.94 in 2018); 303 (seeking fees of $912,975 and expenses of $12,650.64 in 2018); 363 (seeking additional fees of $707,257.50 in 2021); 362 (seeking taxable costs of $531.85 in 2021).

On remand, the Western District refused to hear Appellants' petitions for fees and costs. In December 2021, the Western District struck Appellants' supplemental petitions on the pretense that Tudor had a unilateral right to bar their filing. Confusingly, the Western District also held Tudor could not refuse to compensate Appellants for the hours they worked and costs accrued. *Tudor Merits*, 2021 WL 6126126, at *2 (W.D. Okla. Dec. 28, 2021) ("The Court makes no determination which, if any, of these avenues are available to Young and [Stewart]. Rather, the Court merely observes that there are numerous

options available through which attorneys can be compensated for the time they spent representing [Tudor.] In the absence of compromise, pursuit of attorneys' fees under these options will require initiation of a new litigation. It seems in [Tudor's] interest that [Tudor] and her former and present counsel seek a method to resolve this issue among themselves.").

In September 2022, nearly a year after this Circuit's mandate issued, the Western District dismissed *Tudor Merits* without awarding attorneys' fees or costs to anyone. This was done over Appellants' protests, with the instruction that they must litigate their bills in the *Tudor Interpleader* action. *Tudor Merits*, 2022 WL 4084436, at *2 (W.D. Okla. Sept. 6, 2022).

In *Tudor Interpleader*, 5:22-cv-480-D (W.D. Okla. filed June 13, 2022), Appellants' former client asks the Western District to post hoc approve of a settlement she brokered around all attorney interests. Tudor alleges she brokered the "settlement" in May 2022 for $1,750,000. *Tudor Interpleader*, ECF No. 1.

Tudor seeks interpleader relief, an equitable remedy, despite Oklahoma law absolutely forbidding a client (former or present) from

"settling around" attorneys' interests. 5 Okla. Stat. § 6 ("no settlement between the parties without the approval of the attorney shall affect or destroy such lien"). Tudor has yet to explain why when brokering that agreement, she falsely represented that all attorneys' interests had been satisfied. *Tudor Interpleader*, ECF No. 53-1¶ 4 (settlement agreement stipulating that "all legal expenses, liens, and judgments have been fully satisfied"). Tudor seeks from Appellants and others she sued full reimbursement for her attorneys' fees and costs compensating her for the expense of litigating the *Tudor Interpleader*.

Tudor's theory of her interpleader claim is that she as a client has an absolute right to negotiate a merits settlement with defendants liable for her attorneys' bills under 42 USC § 1988 without consent or approval of the counsel whose bills she purportedly desired to settle. Tudor further insists that of the $1,750,000 settlement she brokered, she was entitled to take for herself some $1,175,575 as damages. Tudor cannot explain how she is legally let alone equitably entitled to damages that are more than twice what this Circuit calculated were due her. *Tudor I*, 13 F.4th at 1047 (approving backpay and capped damages at $360,040.77); *id.* at

1044, *id.* at 1022 n.17 (observing Tudor's front pay should be approximately $74,000 per annum).

Relying on the *Tudor I* 's mandate and the Western District's December 2021 and September 2022 orders indicating Appellants had a right to seek compensation, Appellants joined claims in the *Tudor Interpleader* against Tudor, the Oklahoma subdivisions responsible for their fees and costs under 42 U.S.C. § 1988, and Jillian Weiss who claims responsibility for brokering the "settlement" on Tudor's behalf. *Tudor Interpleader*, Young and Stewart Operative Complaint, ECF No. 32.

In early 2023, motions to dismiss Appellants' claims were filed by Tudor and the Oklahoma subdivisions, both on the theory that Appellants' only recourse for payment was Tudor's interpleader claim. In opposition, Appellants argued that the Western District has no subject matter jurisdiction over Tudor's interpleader claim because she has unclean hands. Appellants also argued that Tudor's failure to make a deposit of the interpleader fund deprived the Western District of jurisdiction. Briefing on those motions to dismiss was completed in April 2023, but no decision has yet issued.

Close in time, Tudor sought leave to cure a defect in her interpleader bid by asking to deposit $563,823.10 into the Court registry. *Tudor Interpleader*, ECF No. 24 at 3. Part of that request asked that Tudor be permitted to deposit less than the sum of $574,425 Tudor pled she owed at the onset of her suit because she spent down the fund between 2022 and 2023. *Compare with* ECF No. 1 ¶ 7.

In December 2023, the Western District *sua sponte* called into question its subject matter jurisdiction over Tudor's interpleader suit for the same reasons identified in Appellants' opposition to the motions to dismiss. *Tudor Interpleader*, ECF No. 57 (citing *Miller & Miller Auctioneers v. GW Murphy Indust.*, 472 F.2d 893 (10th Cir. 1973); *In re Millenium Multiple Emp. Welfare Ben. Plan*, 772 F.3d 634 (10th Cir. 2014)).

In early 2024, the Western District directed the parties to brief whether it had equitable jurisdiction over Tudor's interpleader claim. *See Tudor Interpleader,* ECF No. 63. Briefing was completed in February 2024. No decision has yet issued.

Around this same time, Weiss filed suit against Young in the Western District (which she later withdrew) and in Oklahoma County

District Court (which is still pending). *Weiss v. Young*, CJ-2024-1034 (Okla. Cnty filed Feb. 16, 2024) [*Weiss Suit*]. The *Weiss Suit* is premised on the contention that Young tortiously harmed Weiss by bringing claims against her in the *Tudor Interpleader* suit. Weiss claims in excess of $10,000 in damages. Among other things, Weiss falsely accuses Young of committing ethics violations previously held to lack merit by New York and Oklahoma ethics authorities which she admits she herself filed on Tudor's behalf. (Tudor via Weiss and Colclazier has filed several ethics complaints against Appellants all of which have been dismissed. *Tudor Interpleader*, ECF Nos. 75-1, 75-2, 75-4.)

Despite appearing in the *Weiss Suit* pro se, Weiss demands attorneys' fees and costs from Young. Weiss has not yet explained why the *Weiss Suit* was filed on her behalf and paid for by Jerry Colclazier, as reflected on the docket. *Tudor Interpleader*, ECF No. 75-6. This is curious because Colclazier concurrently maintains that he is entitled to fees and costs as Tudor's counsel in the *Tudor Interpleader* case, as well as a cooperating attorney working under the Weiss Retainer in *Tudor Merits* and *Tudor I*.

In late September 2024, the Western District issued the interlocutory order challenged in this appeal. *Tudor Interpleader*, ECF No. 81. Therein the Western District accepted Tudor's offer for a deposit of $563,823.10 on the pretense of allowing her interpleader claim to go forward. This was done despite this Western District not having yet determined whether it has subject matter jurisdiction over Tudor's claim.

More troublingly still, the interlocutory order purports to hold as a matter of law that Appellants are due no more than a fraction of the "fund" Tudor sought interpleaded. Consequently, the order holds, contrary to the mandate in *Tudor I* and contrary to Oklahoma law, that the Western District will not consider Appellants' actual proved bills. *Tudor Interpleader*, ECF No. 81 at 5 ("Young and Stewart argue they are entitled to the reasonable value of their services . . . but each attorney (or firm) is entitled to a proportionate share of the contingency fee fund created by Tudor's settlement.").

As of this filing, ten years have passed since Appellants took Tudor on as a client. The seventh anniversary of Appellants' successful prosecution of Tudor's merits trial before an Oklahoma City jury is this November 20. It has been nearly six years since Appellants completed

Tudor's merits briefing before this Circuit. And it has been more than three years since this Circuit directed in *Tudor I* that the Western District determine what fees and costs are owed to Tudor's counsel.

Tudor has made one partial payment to Young in all these years. In January 2023, Tudor transmitted a single check to Young in the amount of $20,000 on the pretense that it was a partial payment of what was owed to him in *Tudor Interpleader*. Young (and his wife) accepted that as a credit on his unpaid bills, which including Stewart's bills stand today at $1,624,532.93 not including interest.

## ARGUMENT

## I. THE WESTERN DISTRICT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER TUDOR'S CLAIM.

The Western District entered the interlocutory order challenged here on the presumption that it has subject matter jurisdiction over Tudor's interpleader claim. That decision is wrong as a matter of law.

The Western District did precisely what binding precedent forbids—it presumed jurisdiction for the purpose of proceeding on the merits of Tudor's interpleader claim. The Western District indicates in the interlocutory order that this was done so as to permit Tudor to cure

a defect in her interpleader suit and to effectively dismiss Appellants claims against her, Weiss, and the Oklahoma subdivisions. *Waltman v. Georgia-Pacific*, 590 Fed. Appx. 799, 807 (10th Cir. 2014) (Holmes, J.) (subject matter jurisdiction cannot be presumed to reach the merits) (citing *Steel Co. v. Citizens for a Better Ev't*, 523 U.S. 83, 94 (1998)).

There is no jurisdiction over Tudor's interpleader claim because "the hazard which she seeks to avoid has been occasioned by her own act." *U.S. v. Major Oil*, 538 F.2d 1152, 1158 (10th Cir. 1978) (cleaned up). If Tudor had not settled around Appellants' and other attorneys' interests for less than what she owed them, she would not need to seek interpleader relief because she could pay all her attorneys' bills in full.

Interpleader may be used to settle disputes over a limited fund claimed or likely to be claimed by other persons. However, entitlement to this equitable remedy requires that the interpleader plaintiff not be responsible for the conflicting claims of the interpleader defendants. Tudor does not qualify for interpleader relief, because she is to blame for the hazard for which she seeks relief. If Tudor had not "settled around" her attorneys' bills and brokered a private settlement for less than what she owed, there would be no disputed fund. Consequently, the Western

District has no subject matter jurisdiction over Tudor's interpleader claim. *Farmers Irrigating Ditch & Reservoir v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988) ("It is the general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader.").

## II. THE COLLATERAL ORDER DOCTRINE PROVIDES JURISDICTION OVER NONFINAL INTERLOCUTORY ORDERS.

Federal courts of appeal may exercise jurisdiction over some nonfinal orders. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). The collateral order doctrine accommodates a small set of rulings that, while not concluding the litigation, nonetheless conclusively resolve "claims of right separable from, and collateral to, rights asserted in the action" which are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citing *Cohen*, 337 U.S. at 546; *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)).

Application of the collateral order doctrine typically turns on whether the issue grieved may be "effectively" redressed after final judgment. *See Will v. Hallock*, 546 U.S. 345, 351–52 (2006). This is ostensibly "a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Id.* (quoting *Digital Equipment Corporation v. Desktop Direct*, 511 U.S. 863, 878–79 (1994)). *See also Lauro Lines SRL v. Chasser*, 490 U.S. 495, 502 (1989) (Scalia, J., concurring) ("The importance of the right asserted has always been a significant part of our collateral order doctrine.").

## III. THIS MATTER MEETS THE THREE REQUIREMENTS OF THE COLLATERAL ORDER DOCTRINE.

The collateral order doctrine allows direct appeal of an interlocutory order where the trial court's decision: (1) conclusively decided the disputed question; (2) resolved an important issue separate from the merits; and (3) could not be effectively reviewed on direct appeal. *Kell v. Benzon*, 925 F.3d 448, 452 (10th Cir. 2019) (Bacharach, J.) (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988)).

The Western District's September 2024 interlocutory order (*Tudor Interpleader*, ECF No. 81) satisfies all three requirements of the collateral order doctrine.

***Conclusively decided.*** The Western District's interlocutory order conclusively decides that Appellants are entitled to no more than a fraction of the $563,823.10 Tudor asked to deposit. That determination is premised on the notion that counsel are not entitled to more money than Tudor recoups in damages. But that holding conflicts with *City of Riverside v. Rivera*, 477 U.S. 561 (1986), which holds that private attorneys' general fees owed pursuant to 42 U.S.C. § 1988 compensate the actual labor and costs expended by counsel irrespective of the damages owed to their client.

The interlocutory order conclusively determines a collateral issue— Appellants' disentitlement to their true fees and costs accrued in *Tudor Merits* and *Tudor I*. The interlocutory order also puts Appellants at risk of liability for Tudor's and Weiss' fees and costs insofar as it decides on the merits that Appellants have no legal right to bring claims against them to recoup their unpaid attorneys' bills. Because the interlocutory order imposes significant time and expense on Appellants to proceed in

litigation premised on an issue conclusively determined, it is appealable under collateral order doctrine. *Southern Ute Indian Tribe v. Amoco Production Co.*, 2 F.3d 1023, 1029 (10th Cir. 1993) (citing *Cohen*, 337 U.S. at 546).

**Resolved issue separate from the merits.** The Western District's interlocutory order also resolves an issue separate from the merits of Tudor's interpleader suit.

The Western District's interlocutory order holds as a matter of Oklahoma law that Appellants at most may claim a portion of a fund established by Tudor and the Oklahoma sub-divisions that is less than the bills noticed to her prior to brokering that settlement. The interlocutory order erroneously relies upon a nonbinding and obviously distinguishable opinion, *Miller v. Magnus*, 2019 OK CIV APP 62 ¶ 13, for the proposition that Appellants may take no more than a fraction of the 1/3 of the settlement Tudor brokered around their interests. The Western District's reliance on *Miller* is erroneous. *Miller* is an intermediate appellate decision, and thus an inappropriate authority to ascertain governing Oklahoma law on this *Erie* posture. *West. v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) (federal court hearing state law claims must

follow law of the state as determined by statute and the state's highest court). Moreover, the rule in *Miller* only applies where attorneys' interests were noticed *after* a settlement was brokered, not *before* such settlement, as happened here. Oklahoma law unequivocally states that a client cannot settle around noticed attorneys' liens. 5 Okla. Stat. § 6 ("no settlement between the parties without the approval of the attorney shall affect or destroy such lien").

The remedy available to Appellants under Oklahoma law is to be allowed to seek full payment as would have been calculated had Tudor not tried to settle around their interests. *See, e.g.*, *Nichols v. Nichols*, 222 P.3d 1049 at ¶ 11 (Okla. 2009) ("When an award for an attorney's fee is made directly to the client who is a party, a constructive trust attaches *eo instante* by operation of law to the award for the benefit of the lawyer who performed services for which compensation is allowed."); *Mehdipour v. Holland*, 177 P.3d 544 at ¶ 23 (Okla. 2007) ("The purpose of the charging lien is to have fees and costs due an attorney for services rendered in a suit secured by the judgment and recovery in that suit."). *See also Jones v. Farmers Ins. Exchange of LA*, 112 F.Supp. 952, 955 (W.D. Okla. 1953) (Oklahoma law gives "an attorney who has been

settled around, but who has prior to settlement perfected a statutory lien, the right to sue . . . and make proof of the actual merits of his client's claim and let the Court determine the value of the client's claim, had it gone to court instead of being settled").

Given the foregoing, the Western District's interlocutory order decides an issue "significantly different from the fact-related legal issues that likely underlie" either Tudor or Appellants claims on the merits. *Johnson v. Jones*, 515 U.S. 304, 314 (1995). Insofar as the interlocutory order amounts to a refusal to adjudicate the merits of Appellants' claims let alone their entitlement to fees as mandated by *Tudor I*, it presents an important issue separate from the merits. *In re Kozeny*, 236 F.3d 615, 619 (10th Cir. 2000).

**Cannot be effectively reviewed on direct appeal.** The Western District has no subject matter jurisdiction over Tudor's interpleader claim. Its refusal to recognize as much and instead presume it does have jurisdiction is at best a maneuver to try to excuse its years long failure to abide by *Tudor I*'s mandate.

The Western District's insistence that Appellants fight for their bills to be paid in the interpleader suit, only to unilaterally deny them

that right in the September 2024 interlocutory order merits immediate correction because on its face it decides issues left over from *Tudor I* and violates that mandate which is law of the case. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (conclusive determination of a disputed question completely separate from the merits is effectively unreviewable from final judgment).

*Tudor I*'s instructions on fees and costs, as well as its rough determination of Tudor's limited damages cannot be sidestepped by the merits parties let alone the Western District. *United States v. Dutch*, 978 F.3d 1341, 1345 (10th Cir. 2020) (mandate prevents issue decided via appeal from being relitigated on remand); *Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) ("The mandate rule is a corollary to the law of the case doctrine requiring trial court conformity with the appellate court's terms of remand.") (cleaned up); Wright & Miller at § 4478.3) ("There is nothing surprising about this basic principle, which inheres in the nature of judicial hierarchy.") (cleaned up).

The Western District, in what appears to Appellants' eyes as a misguided effort to convince Tudor to pay her bills privately, has failed

for more than three years to comply with *Tudor I*'s mandate requiring the award of fees and costs. Normally, this Circuit reviews a district court's award of attorneys' fees for abuse of discretion owing to the assumption that it is in a better position to judge the labor performed and monies owed. *Zisumbo v. Ogden Regional Med. Ctr.*, 801 F.3d 1185, 1207 (10th Cir. 2015) (Moritz, J.).

This matter presents such an egregious dereliction of duty that immediate appellate intervention is merited. On remand, the Western District was not free to depart from the normal requirements of Section 1988 fees awards. Trial judges must "provide a reasonably specific explanation for all aspects of a fee determination" or else "adequate appellate review is not feasible." *Perdue v. Kenney A. ex rel. Winn*, 559 U.S. 542, 558 (2010). But as the challenged interlocutory order reveals, the Western District purports to have ceded its solemn responsibility to Tudor. Making matters worse, Tudor inequitably dictates that Appellants are owed some fraction of a fraction of the "fund" she established in contravention of Oklahoma law while also maintaining with the help of Weiss and Colclazier that Appellants owe all three of them money back for daring to insist their bills should be paid in full.

The Western District's interlocutory order merits review now, not after final judgment, in light of the important public interests at stake in cases like this one where a trial court abjectly refuses to be bound by this Circuit's mandate. This Circuit should not hesitate to correct the Western District. If litigants, let alone counsel, who prevail before this Circuit cannot rely upon Circuit mandates being followed by district courts, wrongdoers are perversely incentivized to ignore orders they dislike rather than be bound by them, which is unfortunately precisely what happened here.

The Western District's refusal to abide by this Circuit's mandate in *Tudor I* also merits immediate redress in light of the public interest in ensuring civil rights litigants have access to the judicial process. As the Supreme Court held in *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), Section 1988 serves an important public interest. It incentivizes attorneys to take on civil rights cases even where the client cannot afford to pay by the hour with the promise of full compensation if the client prevails on the merits. The Western District's failure to allow Appellants to recoup the fees and costs they are owed for more than three years since remand turns Section 1988's promise on its ear.

## CONCLUSION

For all the foregoing reasons, Appellants Mr. Young and Ms. Stewart respectfully ask that this Court accept their noticed interlocutory appeal under the collateral order doctrine.

Dated: October 29, 2024

Respectfully submitted,

/s/ Ezra Young
Ezra Young (NY Bar No. 5283114)
LAW OFFICE OF EZRA YOUNG
210 North Sunset Drive
Ithaca, NY 14850
P: (949) 291-3185
ezra@ezrayoung.com

/s/ Brittany M. Stewart
Brittany M. Stewart (OK Bar No. 20796)
PO Box 295
Aurora, MN 55705
P: 405-420-5890
brittany.novotny@gmail.com

## CERTIFICATE OF SERVICE

I certify that on October 29, 2024, I electronically filed the foregoing Status Report with the Clerk of Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Ezra Young
Ezra Ishmael Young

## FRAP Rule 32(g) CERTIFICATE OF COMPLIANCE

I certify that this Memorandum Brief has been prepared in Microsoft Word using 14-point, proportionally spaced font, and that based on word processing software, the brief contains 4,246 words, excluding items that do not count towards the word limit pursuant to Tenth Circuit Rule 27.3(B).

/s/ Ezra Young
Ezra Ishmael Young